**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WHITE BUFFALO CONSTRUCTION, INC., an Oregon corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO CONSOLIDATE WITH CASE NOS. 99-961C AND 00-415C**<br><br>**No. 07-738C**<br><br>**Senior Judge Loren A. Smith**<br><br>**Electronically filed on November 26, 2007** |

In the guise of opposing consolidation, the government argues that this Court no longer has jurisdiction because the government unilaterally converted the default termination of White Buffalo Construction, Inc. ("WBC") to a termination for convenience. However, the government's argument on the merits have nothing to do with consolidation and so are irrelevant to the motion at hand. Even if the government's merits arguments are considered, the government is simply wrong. As detailed below, the earlier cases are not moot, and this Court's existing jurisdiction was not, and cannot lawfully be, impaired by the government's 2004 convenience termination. This Court should order consolidation and proceed to adjudicate the merits of the consolidated appeals.

## I. ARGUMENT

### A. Arguments on the Merits Are Irrelevant to Consolidation

The government seems to overlook that the only motion before the Court is WBC's motion to consolidate under CFC Rule 42(a) for "actions involving a common question of law or fact" and under the Contract Disputes Act (the "CDA") "for the convenience of parties or witnesses or in the interests of justice." 41 U.S.C. § 609(8). That the government is so concerned (without reason, as discussed below) consolidation might alter the outcome of the

litigation proves WBC's point that the cases do indeed involve common questions of law and fact.

Nor does the government explain how anyone's convenience will be promoted or the expenditure of judicial resources and those of the parties reduced by failing to consolidate. The issues on consolidation are those of judicial economy, the potential for delay, confusion and prejudice. *See Cienega Gardens v. United States*, 62 Fed. Cl. 28, 31 (2004); *Karuk Tribe of Cal. v. United States*, 27 Fed. Cl. 429, 433 (1993). Considering these issues—the only ones that are relevant—the government offers not a single reason to deny consolidation. As logic would dictate in considering whether to consolidate cases arising out of the same contract and same course of conduct by the government, WBC's showing on the benefits of consolidation is essentially unopposed.

The government can pursue its arguments on the merits equally well, and much more efficiently, in a consolidated case. This should be the end of the inquiry, and it should not be necessary for WBC to address these arguments. However, as a precaution, WBC does so below.

**B. This Court's Jurisdiction over WBC's Claims for Lost Profits Was Not, and Cannot Be, Impaired by the Government's Belated Declaration of Convenience Termination**

**1. The Only Jurisdiction Lacking Here Is That of the Government to Unilaterally Strip This Court of Authority to Adjudicate the Merits of WBC's Claims**

Assuming it is necessary to address the merits on a motion to consolidate, the government announced its decision to unilaterally convert to termination for convenience here only *after* this case already was pending before the Court and had been set for trial. Once this case was pending before this Court, the government no longer had authority to unilaterally convert to termination for convenience or to deprive this Court of jurisdiction. Instead, precisely

as has occurred here, jurisdiction remained exclusively in this Court to consider WBC's initial and newest claims.

The government argues that consolidation should be denied, and the earlier appeals should be dismissed because (a) if sustained, WBC would be a prevailing party under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504, and (b) that result would be inconsistent with *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), and *Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371 (Fed. Cir. 2002). This argument puts the EAJA cart before the case disposition horse. *Buckhannon* and *Brickwood* involved fee applications submitted after final disposition of the underlying dispute. WBC's appeal involves the proper disposition of the underlying dispute, not a post-disposition fee application. *Brickwood*, interpreting *Buckhannon*, tells us that if we dismiss the appeal, WBC will not be a prevailing party eligible for an EAJA award. *Buckhannon* and *Brickwood* do not tell this Court whether to dismiss or sustain WBC's appeal. Thus, contrary to the government's argument, *Buckhannon* and *Brickwood* do not apply at this stage of the dispute.

The government's arguments go to the Court's current jurisdiction. To decide a motion to dismiss—should the government file one—the Court would look to governing precedents that *Buckhannon* and *Brickwood* do not purport to address. As the Federal Circuit has held, once an appeal has been filed, the government cannot divest a tribunal of jurisdiction by withdrawing the appealed decision. *Falcon Research & Dev. Co.*, 87-1 B.C.A. (CCH) ¶ 19,458, at 98,335 (A.S.B.C.A. 1986), *aff'd*, 831 F.2d 1056, 1056 (Fed. Cir. 1987) ("affirmed on the basis of the Board's opinion"). Also, specifically in the case of withdrawn default terminations, the appeal will be sustained if requested by the appellant, with or without the consent of the government.

*Telimed Health Sys., Inc.*, 92-1 B.C.A. (CCH) ¶ 24,401, at 121,827 (A.S.B.C.A. 1991); *Info. Sys. & Network Corp.*, 92-3 B.C.A. (CCH) ¶ 25,049 (A.S.B.C.A. 1992); *Elec. Sys. & Equip., Inc.*, 97-2 B.C.A. (CCH) ¶ 29,198 (A.S.B.C.A. 1997).

Finally, and decisively, in a default termination appeal, the government has the burden of proving the default. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987); *Moreland Corp. v. United States*, 76 Fed. Cl. 268, 284 (2007). Having converted the default termination to one for convenience while the initial appeals were pending, the government has failed to carry *its* burden of proof in the initial appeals. Consequently, instead of dismissal for mootness, WBC is entitled to a decision sustaining its appeal as a matter of law. *Accord Centron Indus., Inc.*, 02-02 B.C.A. (CCH) ¶ 32,022 (A.S.B.C.A. 2002) (affirming appeal of default termination when, upon close of discovery, government unilaterally sought to convert for convenience).

**2. Even When the Government Timely Converts for Convenience, Not All Claims That a Contractor Might Have, Including Equitable Adjustments, Are Subsumed Within a Termination Settlement Proposal**

In *James M. Ellett Construction Co. v. United States*, 93 F.3d 1537 (Fed. Cir. 1996), a contractor sought recovery for extra work following a termination of its contract for convenience. As is the case here, a dispute arose over whether the court even had jurisdiction to proceed in light of the convenience termination. The Federal Circuit explained:

> Ellett's claim, read as a whole, was submitted for the purpose of obtaining a contracting officer's decision, a request for which was implicit. In the context of a termination for convenience, however, the question is whether Ellett was permitted to submit a claim independently of its termination settlement proposal.
>
> The government argues that when it terminates a contract for convenience, all claims a contractor might have, including equitable adjustments, are subsumed within the termination settlement proposal. Ellett, on the other hand, argues that *there is no authority in the CDA or the FAR "for simply eliminating valid*

> *contractor claims by terminating the contract." We agree with Ellett*.

*Id.* at 1546 (emphasis added).

> Ellett was entitled to submit a claim for the increased costs it incurred due to contract changes the government made on the work it performed, notwithstanding its termination settlement proposal. It submitted a claim for such costs, which was either constructively denied in the contracting officer's settlement determination or deemed denied because the contracting officer did not directly address the merits. *Either way, the trial court had jurisdiction*.

*Id.* at 1548 (emphasis added).

So here as well, the government's conversion of the default termination to one for convenience does not "simply eliminat[e] valid contractor claims." *Id*. at 1546.

**3. A Convenience Termination Cannot Lawfully Be Used Retroactively to Deny a Contractor's Claim for Lost Anticipatory Profit Arising from Government Breaches Occurring Before the Declaration of Conversion**

By the time of conversion, WBC had given notice that it would be seeking, on grounds of pre-default government interference and also through the default itself, profits lost on work that WBC was prevented from performing. This is a meritorious claim.

In *Ardco, Inc.*, 06-2 B.C.A. (CCH) ¶ 33,352 (A.G.B.C.A. 2006), the contractor claimed anticipatory profits for flight hours lost due to damage caused to the contractor's airplane by a government employee. The government sought summary judgment on grounds that a subsequent termination for convenience precluded the contractor's claim. According to the government, the only way in which the contractor could secure anticipatory profits, since the contract contained a termination for convenience clause, was to show that the government converted the termination in bad faith or was otherwise arbitrary and capricious in terminating for convenience. Rejecting the government's contention, the Board first observed that all of the cases on which the government relied were ones in which the *only* alleged government breach

was the termination for convenience, or similar cancellation, itself. *See Krygoski Constr. Co. v. United States*, 94 F.3d 1537 (Fed. Cir. 1996); *Torncello v. United States*, 681 F.2d 756 (Ct. Cl. 1982); *Salsbury Indus. v. United States*, 905 F.2d 1518 (Fed. Cir. 1990); *Kalvar Corp. v. United States*, 543 F.2d 1298 (Ct. Cl. 1976); *T & M Distribs., Inc. v. United States*, 185 F.3d 1279, 1284 (Fed. Cir. 1999); *Carter Indus.*, 02-1 B.C.A. (CCH) ¶ 31,738 (D.O.T.B.C.A. 2002).

The Board then concisely and clearly explained the origins and limits of a termination for convenience clause:

> In deciding this motion, we also need to comment upon what we see as an overly broad characterization by the FS. It asserts that the T for C clause has been created to avoid the Government paying anticipatory profits and seems to take the position that the clause can be used to limit damages in any breach situation. There is no question that where the Government properly uses the T for C clause, that clause provides a limitation on anticipatory profits. However, providing a damages shield for breaches of all types is not why the clause was developed, nor consistent with how it has been used. Rather, the clause was developed and has been utilized in Government contract law for taking Government actions out of the common law context, when the Government cancels a contract or portion thereof, that would otherwise have constituted breach in common law. The T for C clause provides that the Government has the contractual right, a right not existing in common law, to cancel a contract or part thereof, without having to take the penalty of standard breach of contract and without having to pay anticipatory profits. That is because the T for C clause specifically provides that cancellation that fits under the clause is not a breach. Since the clause makes the cancellation not a breach, then it follows that anticipatory profits could be and are excluded. The clause, however, was not intended nor is it properly used, when as here, the Government tries to use it to limit damages caused by an independent breach, which was independent of an attempt to cancel the work. The clause is not intended to cover a situation such as that here, where the Government breached by hindering the contractor's ability to perform.

*Ardco*, 06-2 B.C.A. at 165,382.

The Board next discussed cases, including *Rumsfeld v. Applied Cos.*, 325 F.3d 1328 (Fed. Cir. 2003), and *Hi-Shear Technology Corp. v. United States*, 356 F.3d 1372 (Fed. Cir. 2004), in which the contracts contained termination for convenience clauses and the claims were for anticipatory profits lost when the government diverted work on requirements contracts to another vendor. In both *Applied* and *Hi-Shear*, the Federal Circuit made clear that the presence of the termination for convenience clause did not serve to bar anticipatory profits, if the contractor could show breach and damages.

Applying these Federal Circuit holdings to the government's interference with the contractor's performance by damaging the contractor's plane, and a loss of profits as a result, the Board in *Ardco* concluded:

> The cases show that anticipatory profits are available as a remedy when the Government takes work that is earmarked for the claimant contractor and diverts it to another source. That is notwithstanding the fact that those contracts contained a T for C clause and notwithstanding the fact that the Appellant was not required to show bad faith on the part of the Government. While we acknowledge that there is a factual difference in those cases from the one before us, there is also a similarity, in that the work for which the contractor sought anticipatory profits was work that had been made non-available because of an un-excused Government action, in those cases, conscious diversion of the work [and here, hindrance of the contractor's work by damaging its plane].
>
> The common law measure of damages in the event of breach is that a contractor is entitled to be placed in as good a position as it would have, had the breach not been committed. That would include anticipatory profits. *Northern Helix Co. v. United States*, [21 CCF ¶ 84,304] 524 F.2d 707, 207 Cl. Ct. 862 (1975). The FS has provided no basis for us to not use that measure.

*Ardco*, 06-2 B.C.A. at 165,383-84.

Here, too, the government's termination for convenience cannot, and does not, shield it from liability for profits lost as a result of government breaches occurring before the declaration of a convenience termination. The actions should be consolidated.

**4. When the Government Breaches Its Implied Duty of Objective Good Faith and Fair Dealing, This Breach Must Be Treated Like Any Other Claim for Breach of Contract**

No presumption of good faith attaches when the claim is that, apart from and before a convenience termination, the government breached its implied duty of objective good faith and fair dealing. *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 757-73 (2005). And because this breach must be treated like any other claim, it too is not, and cannot be, extinguished by a retroactive conversion of a default termination to one for convenience. *Ardco*, 06-2 B.C.A. ¶ 33,352; *Ellett*, 93 F.3d 1537.

**5. Even Declaration of a Termination for Convenience Can *Itself* Be a Breach of Contract**

When the *only* act challenged is the act of declaring a contract to be terminated for convenience (and here, *prior acts* also are challenged), a rebuttable presumption applies that the Contracting Officer acted in subjective good faith in making that convenience declaration. Even then, however, "[w]hen tainted by bad faith or an abuse of contracting discretion, a termination for convenience causes a contract breach." *Krygoski*, 94 F.3d at 1541. Consequently, whether the government's 2004 January declaration of termination conversion is *itself* a breach also is a live issue, apart from and in addition to the government's liability for breach arising from the government's pre-default interference and from the default termination itself, when no presumption of good faith attaches at all. *Tecom*, 66 Fed. Cl. at 757-73. If the Court finds that the government's 2004 declaration of termination for convenience was undertaken for the

purpose of seeking to eliminate the government's liability arising from its prior misconduct, then the 2004 declaration is itself an actionable breach of contract.

## II. CONCLUSION

The government's arguments on the merits are irrelevant to WBC's Motion to Consolidate, which is essentially unopposed. But even if the government's arguments on the merits are considered, the government is wrong. WBC's Motion to Consolidate should be granted, and the government's effort to dismiss in the guise of opposing consolidation should be denied.

DATED: November 26, 2007.

STOEL RIVES LLP

/s/ Richard E. Alexander

Richard E. Alexander, OSB No. 69002
Scott J. Kaplan, OSB No. 913550
Attorneys of Record for
White Buffalo Construction, Inc.
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204-1268
Telephone: (503) 224-3380
Facsimile: (503) 294-9167